**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| KRISTEN DOMINGUE and CASEY DOMINGUE, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION FILE NO.: |
| v. | : | 7:20-cv-00098-HL |
| | : | |
| FORD MOTOR COMPANY, | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' MOTION**
***IN LIMINE* TO EXCLUDE ANY EVIDENCE, TESTIMONY OR DOCUMENTARY**
**CONCERNING THE USE OR NON-USE OF A SEAT BELT**

---

Defendant Ford Motor Company ("Ford"), submits this Response to Plaintiffs' Motion *in Limine* to Exclude Any Evidence, Testimony or Documentary Concerning the Use or Non-Use of a Seat Belt ("Motion") (Dkt. 30), seeking a denial of Plaintiffs' Motion and showing the Court as follows:

<u>**INTRODUCTION**</u>

Plaintiffs' expert witness, William Fischer, effectively acknowledged in his Rule 26(a)(2)(B) report, on page 19, as follows:

1

According to the National Highway Traffic Safety Administration (NHTSA)

Frontal air bags have been standard equipment in all passenger cars since model year 1998 and in all SUVs, pickups, and vans since model year 1999.

Air bags are supplemental protection and are designed to work best in combination with seat belts. Both frontal and side-impact air bags are generally designed to deploy in moderate to severe crashes and may deploy in even a minor crash.

Air bags reduce the chance that your upper body or head will strike the vehicle's interior during a crash. To avoid an air-bag-related injury, make sure you are properly seated and remember—air bags are designed to work with seat belts, not replace them.

The activation of an air bag in a crash is dependent on several important factors including: the characteristics of the crash (e.g., speed, other vehicles involved, impact direction); the individual vehicle air bag system's design strategy; and the *crash sensor locations*. Air bags are not intended to deploy in all crashes. There may be circumstances when an air bag does not deploy. Some possible examples follow:

- The crash conditions may be sufficiently moderate where an air bag would not be needed to protect an occupant wearing a seat belt. The seat belt may provide sufficient protection from a head or chest injury in such a crash.

Frontal air bags are generally designed to deploy in "moderate to severe" frontal or near-frontal crashes, which are defined as crashes that are equivalent to hitting a

**FISCHER FORENSIC ENGINEERING**          19

Thus, Plaintiffs acknowledge and indeed readily admit that a vehicle's airbags are the "supplemental restraint system" to a vehicle's primary restraint system, the vehicle's seat belts. (Dkt. 30 at 2). Given the interconnected designs of restraints and airbags, it is pragmatically impossible to try an alleged failed airbag deployment case, without discussing the restraint system. And it would be impossible to conclude that a differently designed airbag would be safer, or would not be more harmful, without considering occupant seat belt use or nonuse. Plaintiffs' retained experts cannot write a report without discussing restraints.

2

Plaintiffs' Motion should be denied because (1) evidence unrelated to Plaintiffs' actual seat belt use falls outside O.C.G.A. § 40-8-76.1's exclusionary limits, a proposition Plaintiffs do not contest; (2) the nature of Plaintiffs' defect allegations and expert testimony *in this case* have already opened the door to the admission of ***all*** seat belt evidence; and (3) if, for the sake of argument, Georgia's seat belt statute were enforced in the manner Plaintiffs advocate, it would be unconstitutional as applied, infringing upon Ford's substantive due process and equal protection rights under both the Georgia and United States Constitutions.

## ARUGMENT AND AUTHORITIES

### I.    Georgia's Seat Belt Statute Is Not So Broad

To begin, Georgia's seat belt statute is silent on the admissibility of seat belt evidence outside an occupant's failure to use their seat belt. In 1988, the General Assembly enacted the Georgia seat belt statute, O.C.G.A. § 40-8-76.1, Ga. Laws 1988, pg. 31. When it adopted O.C.G.A. § 40-8-76.1, the Legislature limited its scope "to provide that a failure to use seat safety belts may not be introduced in evidence in any civil action and may not be used to diminish recovery of damages[.]" 1988 Ga. Laws 31 (emphasis supplied). Subsequent amendments to O.C.G.A. § 40-8-76.l(d) have expressed the same intention. 1999 Ga. Laws 276-277; 1993 Ga. Laws 516-517. The adoption of O.C.G.A. § 40-8-76.1 was a change in Georgia law. "At the time of trial in 1989, evidence of failure to use a seat belt was admissible on the question of damages if there was evidence that the injuries could have been reduced by the use of a seat belt . . ." *Payne v. Joyner*, 197 Ga. App. 527, 528 (1990); *see also Scott v. Chapman*, 203 Ga. App. 58, 59 (1992) superseded by statute on other grounds, *Williams v. Harvey*, 858 S.E.2d 479, 482 (Ga. 2021); *Katz v. White*,

190 Ga. App. 458 (1989); *Sapp v. Johnson*, 184 Ga. App. 603, 605 (1987); *F.A.F. Motor Cars, Inc. v. Childers*, 181 Ga. App. 821, 822 (1987).[1]

The exclusionary scope of O.C.G.A. § 40-8-76.1 is a question of statutory construction. The cardinal rule of statutory construction is that the words of a statute are to be given their plain and unambiguous meaning. *Early v. Early*, 269 Ga. 415, 416, 499 S.E.2d 329 (1998). Georgia's seat belt statute specifically lists the improper purposes of admitting evidence of the failure to wear a seat belt:

> (d) ***The failure of an occupant of a motor vehicle to wear*** a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts *shall not be considered evidence of negligence or causation, shall not otherwise be considered by the finder of fact on any question of liability of any person,* corporation, or insurer . . . and shall not be evidence used *to diminish any recovery* for damages arising out of the ownership, maintenance, occupancy, or operation of a motor vehicle.

O.C.G.A. § 40-8-76.1(d) (emphasis added).

In *Crosby v. Cooper Tire & Rubber Co.*, 240 Ga. App. 857, 866 (1999), rev'd on other grounds, 273 Ga. 454 (2001), the Court held that subsection (d) is both plain and unambiguous. The enactment of O.C.G.A. § 40-8-76.1(d) changed Georgia common law, but only as expressly stated:

> [S]tatutes are not understood to effect a change in the common law beyond that which is clearly indicated by express terms or by necessary implication. *Sears v. Minchew*, 212 Ga. 417, 420(2), 93 S.E.2d 746 (1956).

*Avnet, Inc. v. Wyle Lab'ys, Inc.*, 263 Ga. 615, 620 (1993).

The plain unambiguous language ***only*** limits evidence regarding the Plaintiff's ***failure to wear*** a seat belt and as such Georgia and Federal Courts have consistently permitted the use of

---

[1] The common law seat belt defense for causes of action accruing prior to September 1, 1988, is discussed in Frank E. Jenkins III & Wallace Miller III, *Georgia Automobile Insurance Law, §* 51:20 (2009 ed.).

*other* seat belt evidence at trial:

> [T]he plain language of the statute refers only to the *failure* of an occupant to wear a safety belt. It appears from the record that the undisputed evidence shows that [the non-plaintiff passenger in the subject vehicle] was restrained at the time of the accident and there is nothing in the statute which would preclude evidence of this restraint at trial. Likewise, the statute does not preclude evidence that a safety belt or restraint system was a design component of the vehicle.

*Hockensmith v. Ford Motor Co.*, 2003 WL 25639639, at *4 (N.D. Ga. 2003) (emphasis added).

*See also* Order from *DiMaso v. Ford Motor Co.*, CAFN: 99A-6172-6 (State Court of Cobb County, July 1, 2003), attached hereto as Exhibit A (admitting "evidence that the subject vehicle was equipped with a lap shoulder seatbelt restraint system that met all federal safety standards and that the vehicle contained warnings and instructions concerning its use."); *see also* Order from *Nancy Colp et al. v. Ford Motor Co.*, CAFN: 96-A-2205-5 (State Court of Cobb County, June 8, 2005), attached hereto as Exhibit B (admitting "evidence that the vehicle was equipped with a seatbelt system whose design met federal safety standards.").

The Georgia Court of Appeals has further upheld the admission of evidence of restraint use as part of analyzing occupant's kinematics during a given accident. In *Fulton-Fritchlee v. Douglas*, the plaintiff sued for injuries allegedly sustained in a rear-end automobile accident. 240 Ga. App. 413, 415 (1999). At trial, defense counsel asked the plaintiff if the impact caused the plaintiff to strike anything inside her vehicle. *Id*. The plaintiff was also asked how far the accident caused her to move toward the steering wheel. *Id*. The Georgia Court of Appeals held that this line of questioning did not unlawfully interject the issue of the use or non-use of seat belts into evidence. *Id*. "The questioning never mentioned the issue of seatbelts," and instead "dealt with the relevant issue of force of the impact and how that force, or lack thereof, caused Fulton-Fritchlee's body to react." *Id*.

5

Nothing in O.C.G.A. § 40-8-76.1(d) gives a party the right to mislead the jury or change the facts. Based on the plain language, and a strict and narrow construction as required, the statute does not prevent the admission of evidence regarding: (1) the general design, purpose, and application of seat belts; (2) seat belt design as a component of any vehicle's restraint system; (3) the type of injuries which can be prevented with proper seat belt use (without reference to a plaintiff's specific nonuse); (4) all applicable federal safety standards; (5) the fact that this truck was sold with warnings and instructions concerning proper use of a seat belt; (6) crashworthiness implications created by seat belt misuse; and (7) accident reconstruction, occupant kinematics, and biomechanical analyses, that necessarily encompass and consider seat belt use.

## II.   Seat Belt Usage Evidence Is Admissible Due to the Nature of Plaintiffs' Defect Allegations

### A.    The Pleadings Have Already Opened the Door

Plaintiffs' own allegations opened the door to the admission of evidence they say O.C.G.A. § 40-8-76.1(d) excludes. Plaintiffs seek recovery of damages for injuries allegedly arising from a defect in the passenger side airbag—a failure to timely deploy. (Dkt. 1 at ¶ 5) ("When the collision occurred, the passenger side airbag did not deploy. As the direct and proximate result of the collision and the failure of the passenger side airbag to deploy, Plaintiff Kristen Domingue's head struck the windshield causing serious injury to her head, brain, and neck."). The airbag is however, but *one* component of any vehicle's restraint system.

A vehicle's restraint system includes multiple components, a fact Plaintiffs acknowledge in their Motion when they *correctly* refer to the vehicle's airbag as a "supplemental restraint system." The primary crashworthiness design on all vehicles is the restraint system. (Dkt. 30 at 2). The Ford Owner's Manual instructs occupants to buckle-up even in vehicles with airbags:

> The airbags are a supplemental restraint system and are designed to work with the safety belts to help protect the driver and right front passenger from certain upper body injuries. Airbags do not inflate slowly; there is a risk of injury from a deploying airbag.
>
> ⚠ All occupants of your vehicle, including the driver, should always properly wear their safety belts, even when an airbag supplemental restraint system is provided. Failure to properly wear your safety belt could seriously increase the risk of injury or death.

Owner's Guide at 36.

A jury must be able to consider the effectiveness and usage of ***each*** component of the vehicle's restraint system, including the primary restraint system. Indeed, under Georgia law a jury is supposed to consider that and more in its risk/utility balancing. *Banks v. ICI Americas, Inc.,* 264 Ga. 732, 450 S.E.2d 671 (1994)

### B.    *Plaintiffs' Crashworthiness Claims Open the Door*

A "crashworthy vehicle is one which, in the event of a collision, resulting accidentally or negligently from the act of another and not from any defect or malfunction in the vehicle itself, protects against unreasonable risk of injury to the occupants." *Higginbotham v. Ford Motor Co.*, 540 F.2d 762, 769 (5th Cir. 1976). In a crashworthiness case, Georgia law places the burden on the plaintiff to prove that the alleged design defect was a substantial factor in producing damages over and above those caused by the original impact. *Polston v. Boomershine Pontiac-GMC Truck, Inc.*,

7

262 Ga. 616, 618–19 (1992). This is the so-called second crash that occurs when the occupant strikes the interior of the vehicle.

Airbags are designed to *supplement* the protections afforded by seat belt use, not replace them. Expert testimony in this case will inform the jury that Plaintiff Kristen Domingue ("K. Domingue") did not need a *supplemental* restraint. Had her seat belt been properly worn, it would have likely prevented her from striking the windshield. Ford designed each component of the F-250's restraint system to work in conjunction with and compliment other components of that system. A jury must be permitted to consider the vehicle's restraint system (as it was originally designed by Ford) in determining crashworthiness. Nothing in O.C.G.A. § 40-8-76.1(d) prevents it from doing so. *See McElroy v. Allstate Ins. Co.*, 420 So. 2d 214, 216-17 (La Ct. App. 1982).

    C.    *The Testimony of Plaintiffs' Expert Witnesses Has Opened the Door to Evidence of Plaintiffs' Seat Belt Usage*

If the pleadings and inherent attributes of pursuing a crashworthiness claim did not already open the door and estop Plaintiffs from relying upon O.C.G.A. § 40-8-76.1(d), then their own expert testimony surely has. The doctrine of "opening the door" is premised on the principle that by raising an issue, a party has waived any objection to evidence relevant to that issue. It is a rule of fairness known variously as "waiver," "estoppel," "opening the door," and "curative admissibility." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 177 n.2 (1988). Even when a party "opens the door" with inadmissible evidence, his opponent is entitled to respond in kind when necessary to rebut what might otherwise leave a false impression with the jury regarding a material issue. *Metro Atlanta Trucking Co. v. Kyzer*, 217 Ga. App. 630, 458 S.E.2d 416 (1995) (defendant's testimony that his driver had a "clean" driving record opened door to plaintiff's evidence of driver's poor record).

Plaintiffs retained biomechanical expert, Harold Miller ("Miller"), testified that: (1) Plaintiff K. Domingue *was* properly wearing her seat belt at the time of the accident, (2) her seat belt did *not* malfunction, and (3) K. Domingue's head would not have struck the vehicle's windshield had the passenger side airbag deployed. Deposition of Harold Miller ("Miller Depo") at 30:20–31:2, 53:12–17, 57:20–59:14, 69:18–23, 78:4–13, 82:9–20. These opinions are somewhat perplexing because in his report Miller stated that "[i]f Ms. Domingue was wearing her belt as she states and the abrasions would suggest, *a seatbelt malfunction would have likely been necessary for windshield contact to occur.*" Miller Depo, Exhibit No. 6., Expert Report. He has testified both that there was no malfunction of the seat belt and that it did malfunction.  Both statements cannot be correct.

If that were not enough to open the door to vetting the true facts, Miller then testified that K. Domingue's seat belt might not have prevented her from striking the windshield, even if it was properly worn and assuming no malfunction. Miller Depo at 32:14–33:4; 56:4–59:14; 62:20–64:3. Miller says that K. Domingue could have still struck her head on the front windshield if her seat was pulled too far forward:

> Q.    *So that leads us back to she can only hit the windshield if the seatbelt -- if she was wearing the seatbelt and it malfunctioned or she was not wearing it, right?*
>
> A.    *Yeah, and there's one -- there's one other possibility that I should have put in there.*
>
> Q.    Okay.
>
> A.    *And it would be sitting in close proximity to the instrument panel.*
>
> Q.    *If she was out of position, sitting too far forward?*
>
> A.    *Well, she could be out of position or she might have her seat adjusted so that she's quite close.*

9

*Id.* at 57:6–14 (emphasis added). Miller concedes that this third theory is just that, a theory:

> Q.    Okay. Even though you haven't looked at any crash tests, any sled tests, any engineering drawings, you haven't done a surrogate study, are you able to render an opinion that if Ms. Domingue had been wearing her seatbelt and it functioned properly, she still could have -- her head still could have reached the windshield and fractured it?
>
> A.    Well, it did reach the windshield, and I believe she was wearing it. So I would say that's --
>
> Q.    *Is it physically possible for a -- for this properly functioning seatbelt, if it were being work, for her to reach that location on the windshield in this crash?*
>
> A.    *I haven't demonstrated that. That would -- that would require a surrogate study.*
>
> Q.    *Which you have not done?*
>
> A.    *Which I have not done.*

*Id.* at 62:20–63:12 (emphasis added). In sum, we have three different theories of what could have caused K. Domingue's injurious contact with the front windshield. How do Plaintiffs intend to establish at trial what really happened? The answer is Dkt #30. They seek to prevent Ford from *challenging* whatever version they ultimately pursue.

Ford must be permitted to develop and present evidence refuting Miller's testimony of K. Domingue's seat belt usage now that it has been placed *at issue.* If Georgia's seat belt statute does not exclude Miller's testimony, it does not exclude Ford from responding to it. Plaintiffs may not open the door and then close that same door, preventing a fair and complete presentation of the evidence. Again, nothing in O.C.G.A. § 40-8-76.1(d) gives a party a right to mislead the jury.

**III.    If, as Applied, O.C.G.A. § 40-8-76.1(d) Excludes Evidence of Seat Belt Usage Evidence, then It Violates Ford's Due Process and Equal Protection Rights**

The Georgia and United States Constitutions "prohibit the state from depriving any person of life, liberty, or property, without due process of law." *Schumacher v. City of Roswell*, 344 Ga. App. 135, 138 (2017) (citation omitted). Both guarantee procedural and substantive due process. *Id.* Substantive due process protects against "government power arbitrarily and oppressively exercised." *City of Duluth v. Morgan*, 287 Ga. App. 322, 324 (2007).

A.      *Ford Has a Right to a Defense*

The U.S. Supreme Court has long held that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). A litigant's "right to litigate the issues raised" is "guaranteed . . . by the Due Process Clause." *United States v. Armour & Co.,* 402 U.S. 673, 682 (1971). "Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)).

The Third Circuit in *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 394 (3d Cir. 1994), applied this principle to bar interpretation of a statute as eliminating a defendant's ability to present relevant defenses. It reasoned that because "[p]roperty which one stands to lose as a result of a lawsuit is a property interest protected by the Due Process Clause," interpretation of a statute to prevent parties "from presenting defenses and affirmative defenses to claims which ha[d] been filed against them" must be avoided. *Id.* The court explained: "[s]uch a serious deprivation of property without due process of law cannot be countenanced in our constitutional system." *Id.; cf. Prink v. Rockefeller Ctr., Inc.*, 398 N.E.2d 517, 522 (N.Y. 1979) (breach of privileges was required to allow a defendant to adduce relevant evidence and avoid serious due process concerns).

11

Indeed, the United States Supreme Court has held that a cigarette manufacturer could not be subjected to punitive damages for "injuring a nonparty victim" because it was given "no opportunity to defend against the charge" of fraud by establishing, for example, that such nonparties had assumed the risk of smoking or did not rely on the allegedly fraudulent statements. *Philip Morris USA v. Williams,* 549 U.S. 346, 353–54 (2007). The Court reasoned that the constitutional right to due process guarantees a defendant "an opportunity to present every available defense." *Id.* at 353 (quoting *Lindsey*, 405 U.S. at 66).

The Georgia Constitution is the same, if not broader. Ga. Const. Art.1, Sec.1, ¶ XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

A vehicle manufacturer, like any defendant, is entitled to present every available defense and to litigate the issues raised. *United States v. Armour & Co.,* 402 U.S. 673, 682 (1971). If interpreted as Plaintiffs urge, the Georgia seat belt gag-rule would deprive defendant manufacturers of their rights to defend the crashworthy designs of their automobiles. *See Clark v. Mazda Motor Corp.*, 68 P.3d 207, 210 (Okla. 2003) (Opala, J., concurring) (concluding that barring evidence of seatbelt nonuse in crashworthiness cases would violate due process). As one commentator put it, the preclusion of evidence of seatbelt nonuse in a crashworthiness case "is a denial of due process" because it "denies the manufacturer the right to present evidence that it designed its vehicle with a simple and highly effective means of occupant restraint which the plaintiff failed to use." Janice K. O'Grady, *Minnesota's Seat Belt Evidence Gag Rule: Antiquated and Unfair in Crashworthiness Cases*, 15 WM. MITCHELL L. REV. 353, 369 (1989). The Georgia statute must be interpreted to avoid this result.

Considering the specific allegations of this case, Ford has a fundamental right to show that K. Domingue was not using the primary component of the restraint system. To deny Ford the right to do so will merely mislead the jury and cause it to render a verdict not based upon the true facts. Plaintiffs' Complaint asserts a defect in the restraint *system, which includes in part the passenger airbag*. The airbag was only *one* component to the vehicle's restraint system. The restraint system also included seat belts, which, if properly worn, would have prevented K. Domingue from striking the windshield.

      B.      *If Applied as Requested by Plaintiffs, O.C.G.A. § 40-8-76.1(d) Would Violate the Rational Basis Test*

Under the rational basis test, a statute satisfies all constitutional requirements if it is "reasonably related to a proper legislative purpose and is neither arbitrary nor discriminatory." *C.W. Matthews Contracting Co., Inc. v. Gover*, 263 Ga. 108, 109, 428 S.E.2d 796, 798 (1993) (citations omitted). The purpose behind seat-belt gag rules is to promote seat belt use and bar a Defendant from defending its conduct by attacking the Plaintiff's failure to take precautions. The statute achieves those purposes in two ways. First, the statute bars a Defendant from alleging contributory negligence against the Plaintiff on the grounds that he/she failed to wear a seat belt. Second, the statute prevents a Defendant from alleging the Plaintiff's failure to wear a seat belt was a proximate cause of his/her damages and arguing that the failure to wear a seat belt should diminish the Plaintiff's recovery.

A third, and unintended effect occurs when the seat belt statute is broadly applied to ***effectively bar the Defendant manufacturer's ability to contest liability and establish the reasonableness of its design, considering all the factors that went into that design.*** That outcome is unrelated to the statute's underlying rationale. As applied in the manner Plaintiffs advocate, the evidentiary exclusion does not advance the statute's objective. The legislature's intent in passing

the seat belt statute was grounded in the public policy of encouraging the use of safety seat belts in occupants of passenger vehicles. *Id*. The provision excluding admission of seat belt usage was included in the statute to prevent those who cause vehicular collisions from escaping liability by introducing evidence of a plaintiff's failure to wear a seat belt during the accident. *Id.* at 798–99.

A statute is unconstitutional, as applied if, in a case like this, the statute is applied to effectively prevent the defendant from presenting evidence of how the seat belt was meant to work as part of the intended restraint system design. Ford does not challenge the constitutionality of O.C.G.A. § 40-8-76.1(d), as applied to prevent a Defendant who allegedly caused the accident from using seat belt evidence to bar recovery as part of the plaintiff's negligence or comparative fault. *See Huff v. Shumate*, 360 F. Supp. 2d 1197 (D. Wyo. 2004); *Mott v. Sun Country Garden Prod., Inc.*, 901 P.2d 192 (N.M. App. 1995). Evidence of restraint design and use is offered in this case for entirely different purposes.

It would be an unconstitutional violation of due process to apply this statute to allow Plaintiffs to accuse Ford of an unsafe design of its vehicle's occupant-restraint system and then prevent Ford from showing that the design of that very system is safe.  "A statute may be constitutional as written, yet be unconstitutionally applied in a given case." *State ex rel. Miller v. Locke,* 162 W. Va. 946, 253 S.E.2d 540 (1979) (per curiam).

It is an essential component of procedural fairness that the defendant has an opportunity to be heard and to present evidence. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). State Court Judge Toby Prodgers correctly assessed the as applied due process implications in cases just like this one:

> The court also notes that Ford argues that this case is, among other things, a crashworthiness case.  Ford argues that plaintiffs contend that the vehicle was defectively designed in relation to crashworthiness as well as to rollover stability.  The court, however,

14

does not understand this to be a crashworthiness case. Crashworthiness relates to defects which might be totally unrelated to the cause of the crash. For example, a vehicle might crash though fault of no one, whether the driver of the vehicle, or other drivers on the road, or of the vehicle manufacturer. **If a crashworthiness issue were to relate to the passenger restraint system, then a strong argument could be made that O.C.G.A. § 40-8-76.1(d) has no applicability, or, if it did, then due process considerations might intervene. Plaintiffs appear to concede as much.** See 5/29/03 T. 166-67. However, the only design defect alleged in this case relates to rollover stability of the vehicle, and plaintiffs contend that it is that particular defect which caused the crash and plaintiff's injuries . . . .

*See* Ex. A, Order from *DiMaso v. Ford Motor Co* (emphasis added).

Plaintiffs' response is to direct the Court's attention to *Denton v. DaimlerChrysler Corp.*, 645 F. Supp. 2d 1215 (N.D. Ga. 2009). But *Denton* is inapposite. In *Denton*, the Northern District of Georgia declined to address the constitutionality of the seat belt statute. *Denton*, 645 F. Supp. 2d at 1220 ("The Court concludes that the circumstances of this case do not warrant a stay for the Eleventh Circuit to rule on the interpretation and constitutionality of Georgia's seatbelt statute"). There the court noted that the facts in *Denton* would fail to provide clear guidance as to the constitutionality of the seat belt statute because "evidence pertaining to seat belts was introduced during trial and discussed freely during the course of the trial." *Id. Denton* is further distinguishable for the reason that the defendant there made no attempt to charge the jury on how the seat belt functioned as a part of the overall restraint system. *Id.* at 1222. *Denton* is not persuasive authority.

The evidence of K. Domingue's seat belt nonuse is so crucial to Ford's defense in this case that the exclusion of it would deprive Ford of a fair opportunity to defend its product and would be tantamount to an unfair trial, violating Ford's due process rights. *See e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 687 (1986) (finding the fundamental right to due process includes "a fair opportunity to present a defense."); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (finding the trial court's

15

evidentiary rulings precluding testimony that was critical to the defense case deprived the defendant of a fair trial in violation of his due process rights); *Wheeler v. N. L. R. B.*, 314 F.2d 260 (D.C. Cir. 1963) (finding the Examiner violated the employer's due process rights by allowing the General Counsel to present evidence of the parties' bargaining history, but not letting the employer to do so).

While the Georgia Legislature may pass laws affecting the safety of its citizens, it is not authorized to deny a Defendant's due process protections.

> C.    *If Applied as Plaintiffs Advocate, the Georgia Seat Belt Gag-Rule Would Discriminate Against Automotive Manufacturers in Violation of the Equal Protection Clauses of both the Georgia and Federal Constitutions*

The equal protection clauses of the Georgia and Federal Constitutions require that state action "treat similarly situated individuals in a similar manner." *City of Atlanta v. Watson*, 267 Ga. 185, 187 (1996). A successful equal protection challenge generally requires a showing that state action was undertaken with an unreasonable purpose or was arbitrary and capricious. *Id.* The equal protection guarantees of the U.S. Constitution and the Georgia Constitution, prohibit the legislature from "creating a classification which serves no rational purpose or which arbitrarily divides similarly situated citizens into difference classes and treats them differently." *Pace v. Smith,* 248 Ga. 728, 286 S.E.2d 18, 20 (1982). The proper inquiry for equal protection is whether the means chosen by the legislature are rationally related to the advancement of the statute's objectives. *Nunnally v. Tr. Co. Bank*, 244 Ga. 697, 261 S.E.2d 621, 623 (1979), *cert. denied*, 445 U.S. 964 (1980). While the Legislature has authority to treat its citizens differently, it is not permitted to accord such different treatment to a class of persons through means that are wholly unrelated to the objective of the statute. *Bickford v. Nolen*, 240 Ga. 255, 240 S.E.2d 24, 26 (1977). To be constitutional, a classification must be "reasonable, not arbitrary, and must rest upon some

ground of difference having a fair and substantial relation to the object of the legislation . . ." *Id.* (quoting *F.S. Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415 (1920)).

Here, there is no rational reason for denying Ford the right to present relevant and material evidence in defense of its crashworthiness design, merely because in might touch upon seat belt use.  It is purely arbitrary. As advocated by the Plaintiffs, O.C.G.A. § 40-8-76.1(d) would impose an irrational and arbitrary classification upon one class of litigants. In this case, equal protection would be violated because the exclusion creates unconstitutionally disparate treatment of automobile manufacturers like Ford by putting them in a class of litigants denied the ability to use relevant evidence. *Banks v. ICI Americas*, contemplates the admission of evidence that bears upon the risk/utility balancing, including the gravity and severity of the danger posed by the design; the likelihood of that danger; the user's knowledge of the product; the efficacy of warnings; the user's ability to avoid danger; the state of the art at the time the product is manufactured etc. Unlike other civil lawsuit Defendants, Ford would be prevented from using relevant and material evidence to rebut the Plaintiffs' defect allegations, simply because that evidence involves an occupant's failure to use an available seat belt. None of the uses or purposes for that evidence as outlined herein offends the Legislature's objectives in O.C.G.A. § 40-8-76.1(d).

> D.    *Ford's Statutory Construction Is the Correct One*

The Georgia Supreme Court seeks to interpret Georgia's statutes "to avoid ... constitutional issues." *Postell v. Humphrey*, 604 S.E.2d 517, 519 (Ga. 2004); *see also 105 Floyd Rd., Inc. v. Crisp Cty.*, 613 S.E.2d 632, 636 n.5 (Ga. 2005) ("this Court has the authority to impose a narrow construction on legislation to avoid constitutional infirmities"). Indeed, the court will construe a statute in a manner contrary to its clear terms to avoid unconstitutionality. *See, e.g., Mansfield v. Pannell*, 261 Ga. 243, 404 S.E.2d 104, 105–06 (1991). The Georgia statute should not be

unconstitutionally interpreted to bar seat belt evidence as described herein in crashworthiness such as this.

## **CONCLUSION**

Defendant Ford Motor Company respectfully requests this Court deny Plaintiffs' Motion *in Limine*, allow the admission all seat belt evidence, including seat belt usage evidence, and hold O.C.G.A. § 40-8-76.1(d) unconstitutional to the extent discussed above.

Respectfully submitted this 27th day of July, 2021.

WATSON SPENCE LLP

***/s/ Michael R. Boorman***
Michael R. Boorman
Georgia Bar No. 067798
Evan E. Smith, IV
Georgia Bar No. 514676
Timothy M. Andrews
Georgia Bar No. 455899
999 Peachtree Street, N.E.
Suite 1130
Atlanta, Georgia 30309
Telephone: (229) 436-1545
mboorman@watsonspence.com
esmith@watsonspence.com
tandrews@watsonspence.com


Paul F. Malek
*Admitted Pro Hac Vice*
D. Alan Thomas
*Admitted Pro Hac Vice*
HUIE FERNAMBUCQ & STEWART LLP
3291 US Hwy 280, Suite 200
Birmingham, Alabama 35243
Telephone: (205) 297-8850
pmalek@huielaw.com
athomas@huielaw.com
***ATTORNEYS FOR DEFENDANT***
***FORD MOTOR COMPANY***

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Craig Alan Webster, Esq.
CRAIG A. WEBSTER, PC
405 Love Avenue
Tifton, GA 31794
cwebster@twflaw.com

This 27th day of July 2021.


*s/ Michael R. Boorman*
Michael R. Boorman
Georgia Bar No. 067798