**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **KRISTEN DOMINGUE, *et al*.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 7:20-cv-98 (MTT)** |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ORDER**[1]

Plaintiffs Kristen and Casey Domingue move in limine to exclude any evidence concerning the plaintiffs' use or non-use of seatbelts at the time of the subject collision. Doc. 30.  For the following reasons, the plaintiffs' motion in limine (Doc. 30) is **GRANTED**.

**I. BACKGROUND**

In March 2020, Casey Domingue was driving the plaintiffs' 2015 Ford SRW Super Duty Pickup truck with Kristen Domingue in the passenger seat when another vehicle struck the plaintiffs' truck head-on.  Doc. 1 ¶ 4.  The passenger side airbag did not deploy.  *Id*. ¶ 5.  As a result, "Kristen Domingue's head struck the windshield causing serious injury to her head, brain and neck."[2]  *Id*.  Accordingly, on May 20, 2020, the plaintiffs filed this products liability action against Ford alleging strict liability and

---

[1] This action was reassigned to the undersigned on January 24, 2023.

[2] Defendant Ford Motor Company does not dispute that the passenger side airbag did not deploy or that Kristen Domingue was injured in the collision.  Docs. 50-2 ¶¶ 1-6; 78-1 ¶¶ 1-6.

negligence regarding the design of the subject vehicle's occupant restraint system.  *Id*.
¶¶ 11-27.

The plaintiffs "anticipated that Defendant will produce expert testimony focused
on the question of whether Plaintiffs were wearing their seatbelts at the time of the
subject collision."  Doc. 30-1 at 2.  Accordingly, on July 6, 2023, prior to the deadline for
Ford to designate its expert witnesses, the plaintiffs filed this motion in limine.  Docs. 30;
31; 32.  The plaintiffs argue seatbelt use evidence is "irrelevant and prohibited" pursuant
to Georgia's Seatbelt Statute, O.C.G.A. § 40-8-76.1.  Doc. 30-1 at 3.  Georgia's Seatbelt
Statute provides, in relevant part:

> The failure of an occupant of a motor vehicle to wear a seat safety belt in
> any seat of a motor vehicle which has a seat safety belt or belts shall not be
> considered evidence of negligence or causation, *shall not otherwise be*
> *considered by the finder of fact on any question of liability of any person,*
> *corporation, or insurer*, shall not be any basis for cancellation of coverage
> or increase in insurance rates, and *shall not be evidence used to diminish*
> *any recovery for damages arising out of the ownership, maintenance,*
> *occupancy, or operation of a motor vehicle*.

O.C.G.A. § 40-8-76.1(d) (emphasis added).  Thus, the plaintiffs argued that "the law of
Georgia could not be more clear; the use or non-use of a seatbelt is not admissible in
evidence in a civil action of any nature.  If it is not admissible at trial, there is no sound
reason for allowing discovery on the matter."  Doc. 30-1 at 6.

Ford responded, arguing for the admission of "all seat belt evidence, including
seat belt usage."  Doc. 34 at 18.  First, Ford argued that Georgia's Seatbelt Statute "is
not so broad" as to prohibit evidence other than "evidence regarding the Plaintiff's
failure to wear a seatbelt."  *Id*. at 3-4 (emphasis omitted).  The statute does not, Ford
argued, ban admission of evidence of "seat belt design as a component of any vehicle's
restraint system" or "crashworthiness implications created by seat belt misuse."  *Id*. at 6.

Second, it argued the plaintiffs "opened the door" to the allegedly inadmissible evidence when (1) they alleged a defective passenger side airbag, (2) they asserted claims of crashworthiness, and (3) their expert, Harold Miller, testified to Kristen Domingue's use of her seatbelt.  *Id*. at 6-10.  Third, Ford argued that, as applied, Georgia's Seatbelt Statute violates its due process rights because it prevents Ford from defending the reasonableness of the truck's occupant restraint system's design and violates its equal protection rights because it "creates unconstitutionally disparate treatment of automobile manufacturers like Ford by putting them in a class of litigants denied the ability to use relevant evidence."  *Id*. at 11-17.

After a hearing on the motion, Ford moved the Court to certify questions to the Supreme Court of Georgia regarding the application and scope of Georgia's Seatbelt Statute.  Docs. 47; 48.  Specifically, Ford moved the Court to certify the following:

> When the plaintiff has alleged that an auto manufacturer defectively designed the vehicle's restraint system, does O.C.G.A. § 40-8-76.1(d) bar the admissibility of evidence that the plaintiff chose not to use the restraint system, in not wearing the provided seatbelt? If so, is O.C.G.A. § 40-8-76.1(d) unconstitutional as applied because it violates the manufacturer's Due Process rights?

Doc. 48 at 1.  The plaintiffs responded in opposition, and three days later, moved for partial summary judgment or, in the alternative, to strike defenses, on the issue of whether Ford can present a defense based on the plaintiffs' use or non-use of seatbelts. Docs. 49; 50.

The Court then, on its own motion, certified three questions to the Supreme Court of Georgia:

> Does O.C.G.A. § 40-8-76.1(d) preclude a defendant in an action alleging defective restraint system design and/or negligent restraint system manufacture from producing evidence related to:

(1) The existence of seatbelts in a vehicle as part of the vehicle's passenger restraint system; or
(2) Evidence related to the seatbelt's design and compliance with applicable federal safety standards; or
(3) An occupant's nonuse of a seatbelt as part of their defense?

Docs. 58; 59; 60; 63; 64 at 2.  The Supreme Court of Georgia answered the three certified questions on June 22, 2022.  Doc. 69; *Domingue v. Ford Motor Co.*, 314 Ga. 59, 875 S.E.2d 720 (2022).  The Supreme Court of Georgia answered the first two questions "no" and the third question "yes."  *Domingue*, 314 Ga. at 59-60, 875 S.E.2d at 723.  The Court then gave the parties an opportunity to submit surreplies to the plaintiffs' motion in limine in light of the Supreme Court of Georgia's decision.  Doc. 73. The parties filed their surreplies, and Ford responded to the plaintiffs' motion for partial summary judgment.  Docs. 74; 75; 78.  The plaintiffs' motion for partial summary judgment became ripe on December 14, 2022.  Doc. 85.

The Court then ordered the parties to submit supplemental briefs addressing whether bifurcation of the issues of liability and damages is appropriate.  Docs. 86; 87. At a February 16, 2023 hearing, the Court announced that it would bifurcate the trial as more fully discussed below.  *See* Doc. 89 at 23:7-10, 32:6-9.  The Court allowed the parties to submit briefs in response to the Court's announcement.  *Id*. at 32:16-20. Those briefs have been received, and neither party takes issue with bifurcating the trial. Docs. 90; 91.  The plaintiffs agree the case should be bifurcated.  Doc. 90 at 1.  Ford understands the parameters of the evidence that will be introduced at trial and ultimately "agrees that the Court's bifurcation approach addresses many of the concerns raised by Ford."  Doc. 91 at 6.  The parties provided thoughtful suggestions regarding the

parameters and mechanics of bifurcation, which the Court will address at pretrial hearings.

## II. DISCUSSION

Georgia's Seatbelt Statute provides, in relevant part:

> The failure of an occupant of a motor vehicle to wear a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts shall not be considered evidence of negligence or causation, *shall not otherwise be considered by the finder of fact on any question of liability of any person, corporation, or insurer*, shall not be any basis for cancellation of coverage or increase in insurance rates, and *shall not be evidence used to diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a motor vehicle*.

O.C.G.A. § 40-8-76.1(d) (emphasis added).  As the Court and the parties now know from the Supreme Court of Georgia's decision, the statute (1) "does not preclude a defendant in an action alleging defective restraint-system design or negligent restraint-system manufacture from producing evidence related to the existence of seatbelts in a vehicle as part of the vehicle's passenger restraint system" and (2) "does not preclude such defendants from producing evidence related to the seatbelt's design and compliance with applicable federal safety standards," but (3) does preclude "consideration of the failure of an occupant of a motor vehicle to wear a seatbelt for the purposes set forth in [O.C.G.A. § 40-8-76.1(d)], even as part of a defendant-manufacturer's defense." *Domingue*, 314 Ga. at 59-60, 875 S.E.2d at 723.

Consistent with all that, the Supreme Court of Georgia made clear that "the statutory restrictions are all predicated on the 'failure of an occupant of a motor vehicle to wear a seat safety belt.'  It follows that if that evidentiary

predicate is not met, the restrictions outlined in OCGA § 40-8-76.1 (d) do not apply." *Id*. at 63, 875 S.E.2d at 725.

Although the Supreme Court of Georgia declined to determine the merits of Ford's as-applied constitutional concerns, the court did state that "some of [the justices] have serious concerns about the constitutionality of" Georgia's Seatbelt Statute. *Id*. at 67, 69, 875 S.E.2d at 728-29. However, the justices' concerns were based on the assumption that the statute potentially "strips" Ford from utilizing "evidence that could be critical to its ability to present a defense." *Id*. at 69, 875 S.E.2d at 729. As discussed below, bifurcation moots those concerns.

In sum, the Supreme Court of Georgia made clear that Ford is generally free to introduce evidence of the role of seatbelts in the design and operation of the occupant restraint system. It just cannot introduce evidence that Kristen Domingue was not wearing a seatbelt.

The Court has reviewed and taken into consideration the parties' evidentiary and constitutional concerns. After considering these concerns, and weighing the options, the Court concludes bifurcating the trial on the issues of liability and damages will resolve and prevent any evidentiary or constitutional disputes regarding the application of Georgia's Seatbelt Statute.

## A. Bifurcation

Phase one of the bifurcated trial will focus solely on the issue of liability: whether Ford's 2015 SRW Super Duty Pickup truck's occupant restraint system was defective as alleged by the plaintiffs in their strict liability and negligence claims. If the jury finds the design is not defective, the trial is complete. If the

jury, however, does find the design defective, the trial continues to phase two. Phase two would then focus on the issues of causation and damages.

**B. Bifurcation and the Introduction of Seatbelt Use Evidence**

Bifurcation resolves Ford's concern that Georgia's Seatbelt Statute, as the plaintiffs seek to apply it, precludes Ford, unconstitutionally or otherwise, from demonstrating that its occupant restraint system is not defective and that it performed as designed and intended.

The plaintiffs argue "that the design of the airbag was such that … it would not deploy in a wreck containing [these] facts," and therefore, it is "an unreasonable design."  Doc. 89 at 4:18-21.  Ford argues that the airbag was properly designed *not* to deploy in a collision like this one.  This is because "crash engineers must and do make assumptions regarding seatbelt use and they consider the dangers of early airbag deployment to unbelted occupants in all manners of possible crash scenarios."  *Id*. at 6:22-7:3.  Thus, in the design of its occupant restraint system, Ford considers many factors, including whether an occupant wears a seatbelt, where the occupant is within the vehicle, when an airbag should fire, and the type of collision.  *Id*.

Given these respective positions, it is clear to the Court that evidence of whether Kristen Domingue was or was not wearing her seatbelt will not be relevant in phase one.[3]  As the Supreme Court of Georgia stated, Georgia's Seatbelt Statute does not preclude "evidence about the existence of seatbelts in a vehicle," nor does it preclude the "introduction or consideration of evidence

---

[3] The parties focus on Kristen, not Casey, Domingue's use or non-use of the truck's seatbelts.  *See* Docs. 74 at 1; 75 at 10.

related to a seatbelt's design or evidence about federal safety standards."

*Domingue*, 314 Ga. at 61-66, 875 S.E.2d at 724-26.  The plaintiffs seek to prove

that the airbag should have been designed to fire in a collision like the one the

plaintiff was in—they can do so without evidence of Kristen Domingue's specific

seatbelt use.  Ford wishes to respond to that argument by showing that the

occupant restraint system was properly designed, and the airbag rightly did not

deploy in the collision—they can do that without evidence of Kristen Domingue's

specific seatbelt use.  Ford is, however, free to introduce evidence of the role of

seatbelts in the design and operation of the occupant restraint system.

       In sum, the parties' liability arguments do not require the introduction of

evidence regarding Kristen Domingue's use of a seatbelt.  The plaintiffs are not

alleging the design's defectiveness depends upon Kristen Domingue wearing a

seatbelt, and Ford is not responding that its design is not defective because of

Kristen Domingue's failure to wear a seatbelt.  Again, Georgia's Seatbelt

Statute's evidentiary provisions "are predicated on an attempt to introduce

evidence that an occupant was not wearing a seatbelt.  And until that happens,

the statute simply does not come into play."  Doc. 89 at 9:4-8.  Accordingly, the

parties will have a full opportunity to present their liability arguments.

       As discussed at the February 16, 2023 hearing, bifurcation moots Ford's

constitutional arguments.  First, Ford's due process argument would be moot because it

is based on the premise that Georgia's Seatbelt Statute, as applied, would deny Ford

the ability to defend its occupant restraint system.  Docs. 34 at 11-13; 74 at 11-12.

However, in proving the reasonableness of the occupant restraint system's design, Ford

can introduce evidence of the role of seatbelts in the system's design and operation without proving that Kristen Domingue did not use her seatbelt.  As Ford itself states, Georgia's Seatbelt Statute is only unconstitutional "if its application permits Plaintiffs to accuse Ford of an unsafe occupant restraint design and then prevent[s] Ford from proving how its design is safe."  Doc. 74 at 14-15 (emphasis omitted).  Ford can do exactly that.[4]  It can present its defense fully without the need to point to Kristen Domingue's use or non-use of her seatbelt.

Second, bifurcation moots Ford's argument that Georgia's Seatbelt Statute violates the equal protection clauses of the United States and Georgia Constitutions. Doc. 34 at 16-17.  Ford argued its equal protection rights would be impinged "because the exclusion [of seatbelt evidence] creates unconstitutionally disparate treatment of automobile manufacturers like Ford by putting them in a class of litigants denied the ability to use relevant evidence."  *Id*. at 17.  Not so.  Ford is now in the same position as all other defendants facing Georgia's Seatbelt Statute.  Once the jury determines whether the truck's occupant restraint system is defective, the only issues remaining will be causation and damages.  And at that point, as the Supreme Court of Georgia made clear, no defendant, including those who are not automobile manufacturers, is allowed to introduce evidence of a plaintiff's seatbelt use.  Thus, Ford, in phase one, can present its full defense, and Ford, in phase two, like any other defendant, cannot

---

[4] As Ford previously pointed out, "the statute does not prevent the admission of evidence regarding: (1) the general design, purpose, and application of seat belts; (2) seat belt design as a component of any vehicle's restraint system; (3) the type of injuries which can be prevented with proper seat belt use (without reference to a plaintiff's specific nonuse); (4) all applicable federal safety standards; (5) the fact that this truck was sold with warnings and instructions concerning proper use of a seat belt; (6) crashworthiness implications created by seat belt misuse; and (7) [pre-collision] accident reconstruction, occupant kinematics, and biomechanical analyses, that necessarily encompass and consider seat belt use."  Doc. 34 at 6.

adduce evidence that an occupant was not using a seatbelt.  Therefore, Ford will not be in an "irrational and arbitrary" class of litigants who are "denied the ability to use relevant evidence."  *Id*.

### III. CONCLUSION

Accordingly, plaintiffs' motion in limine (Doc. 30) is **GRANTED**, and their motion for partial summary judgment (Doc. 50) is **terminated as MOOT**.  It is further **ORDERED** that the trial in this action be bifurcated.

**SO ORDERED**, this 7th day of March, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT